**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**H. M. PATTERSON & SON, INC., Respondent.**

**No. 80–7081**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Feb. 9, 1981.

---

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., for petitioner.

Smith, Curry & Hancock, Frank E. Specht, Atlanta, Ga., for respondent.

Curtis L. Mack, Atlanta, Ga., for other interested party.

Before TJOFLAT, VANCE and THOMAS A. CLARK, Circuit Judges.

VANCE, Circuit Judge:

This is a petition for the enforcement of an order of the National Labor Relations Board arising out of a finding by the Board that the respondent company had violated section 8(a)(5) and (1) of the National Labor Relations Act,[1] 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with the union certified by the Board. The company, H. M. Patterson & Son, Inc., a funeral home business with four mortuary facilities in Atlanta, Georgia, refused to bargain, arguing that the Board's determination of the appropriate bargaining unit arbitrarily departs from established Board precedent that an all-employee unit is the only appropriate unit in the funeral home industry. Additionally, the company contends that the Board's decision that the four sons of a twenty percent shareholder were not eligible voters was erroneous.

H. M. Patterson & Son, Inc., founded in Atlanta in the last century, is a closed corporation, entirely owned by relatives of the late Fred W. Patterson, Jr. The business is managed exclusively by Brannon Lesesne, president and thirty percent shareholder, and Dan Allen, vice president, secretary and twenty percent shareholder.

---

1. 29 U.S.C. §§ 151 *et seq.* (hereinafter referred to as the Act).

On June 6, 1978 General Teamsters Local Union No. 528 filed a representation petition for an election in a unit consisting of licensed funeral directors, licensed embalmers and apprentice embalmers. The company opposed the union's petition on the ground that the unit sought by the union was inappropriate and that the appropriate unit should consist of all employees, including attendant-receptionists, office clericals, maids, porters, yard staff, drivers, maintenance men and organists. Following a hearing held on June 20 and 21, the regional director included attendants-receptionists in the unit,[2] concluding that all of these employees work together in the preparation of the body for final burial. The director rejected the company's contention that all the employees of the firm should be included in the bargaining unit. Although recognizing that there was some occasional, minor overlap of duties between the included and excluded employees, the director concluded that the unit sought by the union, as modified, shared a community of interest and was therefore an appropriate bargaining unit.

In a representation election held on August 3, 1978, there were eighteen ballots in favor of the union, fourteen against, and five were challenged; a number sufficient to affect the results of the election. The challenged ballots included those of the four sons of Dan Allen and the grandson of Brannon Lesesne. A hearing on the challenges was held on September 11. The evidence at the hearing, in addition to showing the family ownership of the firm, also disclosed that the four Allen sons had all been in college until June 19, 1978, with a major part of their expenses paid by their father. They lived at home with their parents until mid-July when they moved to a cabin owned by their father, for which they pay one hundred dollars monthly rent, including utilities. Based on this evidence, on

September 27 the hearing officer issued his report, recommending that the four challenges to the Allen children be sustained, that the Lesesne challenge be overruled, and that the union be certified. Thereafter, respondent filed exceptions and a supporting brief. The Board adopted the hearing officer's recommendations, without reaching the challenge to Lesesne, because the remaining challenge was no longer determinative of the election.

In reviewing the Board's determination of the appropriate bargaining unit, we note that "the Board is not by statute required to choose *the most* appropriate bargaining unit, only to select a unit appropriate under the circumstances," *NLRB v. Southern Metal Service, Inc.*, 606 F.2d 512, 514 (5th Cir. 1979) (citing *NLRB v. Bogart Sportswear Manufacturing Co.*, 485 F.2d 1203, 1206 (5th Cir. 1973)) (emphasis in original). Our standard for reviewing a Board determination of the collective bargaining unit is "exceedingly narrow." *NLRB v. Fidelity Maintenance & Construction Co.*, 424 F.2d 707, 709 (5th Cir. 1970). "Board unit determinations involve of necessity a large measure of informed discretion and should not be set aside unless the reviewing court finds that the Board has exercised its discretion in an arbitrary or capricious manner." *Spartan Industries v. NLRB*, 406 F.2d 1002, 1005 (5th Cir. 1969).

Applying this standard of review, the Board's determination of the bargaining unit does not justify denial of enforcement of the bargaining order. The employees found by the Board to share a "substantial community of interest" are all directly involved in working with the body of the deceased. The funeral directors and embalmers, along with the assistant funeral directors and registered apprentices, embalm and cosmetize the remains, dress them, and place them in a casket. The attendants-receptionists style the hair of fe-

**2.** The regional director determined that the appropriate unit for collective-bargaining purposes within the meaning of section 9(b) of the Act was "All full time and regular part time funeral directors, assistant funeral directors, embalmers, apprentices, and attendant receptionists employed by the Employer at its four Atlanta, Georgia mortuary facilities, but excluding all other employees, office clerical employees, professional employees, guards and supervisors as defined in the Act."

male remains and manicure their nails. Accordingly, they work together on a common task with which the other employees have little or no involvement. In this case the Board has selected a unit "appropriate under the circumstances." *NLRB v. Southern Metal Services*, 606 F.2d at 514.

The company argues that we are faced with an exception to the general rule of deference to the Board's decision, because the Board is not following its own precedents, contending that "[W]here the Board makes an unexplained departure from its established criteria for unit determination we should deny enforcement . . . ." *NLRB v. WGOK, Inc.*, 384 F.2d 500, 503 (5th Cir. 1967). The company cites four prior Board cases involving funeral homes that it asserts establish that only an all-employee unit is appropriate. *Riverside Memorial Chapel, Inc.*, 226 N.L.R.B. 2 (1976); *W. W. Chambers Co.*, 124 N.L.R.B. 984 (1959); *D.W. Newcomer's Sons*, 117 N.L.R.B. 565 (1957); *Utter-McKinley Mortuaries*, 98 N.L.R.B. 450 (1952). These cases, however, do not establish a uniform rule. In *D. W. Newcomer's Sons* musicians were not included in the unit, and in *Riverside Memorial Chapel, Inc.* office clericals were excluded. In addition, in some of these cases job classifications were included in the unit absent disagreement among the parties.

The Board adopted the hearing officer's recommendation that the challenges to the four Allen sons be sustained. The hearing officer based his finding that the sons were ineligible to vote in the election on two independent grounds. First, he determined that the four sons were "employed by their parent and, as such, under Section 2(3) of the Act, are not employees of the Employer."[3] Alternatively, the hearing officer excluded them under section 9(b) of the Act for being more "closely aligned" with management than with their fellow employees.

■ In *Linn Gear Co. v. NLRB*, 608 F.2d 791 (9th Cir. 1979) the court reviewed the history of the relationship between sections 2(3) and 9(b) in adopting the standard to be applied by the Board in determining whether to include or exclude a blood related employee from a bargaining unit. The ninth circuit approved the following guidelines enunciated by the seventh circuit in *NLRB v. Caravelle Wood Products, Inc.*, 466 F.2d 675 (7th Cir. 1972):

There are a number of factors the Board must consider under section 9(b): how high a percentage of stock the parent or spouse owns, how many of the shareholders are related to one another, whether the shareholder is actively engaged in management or holds a supervisory position, how many relatives are employed as compared with the total number of employees, whether the relative lives in the same household or is partially dependent on the shareholder.

466 F.2d at 679.[4] Additionally, the court in *Linn* added three other factors for consideration:

(1) the activity, if any, of the employee in the Union (2) the total number of employees as against the number of blood related employees and (3) the overall ties and social activities of the family involved.

608 F.2d at 796.

■ Like the ninth circuit, we follow a "community of interest" test in determining the appropriateness of a bargaining unit. *Southern Metal Service, Inc.*, 606 F.2d at 513. We therefore join the seventh and ninth circuits in adopting the *Caravelle* and *Linn* standards, noting that not every factor on the list may be relevant in all cases, and that the list of factors is not exhaustive. Applying the *Caravelle* test, and recognizing the discretion Congress has given the Board, *NLRB v. Smith Alarm Systems*, 524 F.2d 983, 985 (5th Cir. 1975), we uphold the Board's determination on the voting challenges.

---

**3.** The hearing officer cited *Schrementi Brothers, Inc.*, 179 N.L.R.B. 853 (1969); *Foam Rubber City No. 2 of Florida, Inc.*, 167 N.L.R.B. 623 (1967) as analogous support for his finding.

**4.** *See also NLRB v. Caravelle Wood Products, Inc.*, 504 F.2d 1181 (7th Cir. 1974) (court approved exclusion of six employees under an "expanded community of interest" test).

A number of procedural issues are also raised by the company on appeal. One contention is that the Board improperly sustained a challenge to the Allen sons on a ground not specifically raised by the union at the time of the voting. The union challenged the ballots of the four sons on the basis of section 2(3) not section 9(b). The challenge was worded "son of an owner" or "of an Employer." Nonetheless, in view of the close relation historically between the two sections, and after having read the record of the hearing, we find no abuse of discretion on the part of the Board. We have examined defendant's other complaints, and find them to be without merit.

ENFORCED.